U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

NOV 29 2012

LAWRENCE K. BAERMAN, CLERK
ALBANY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*********************************

UNITED STATES OF AMERICA

v.

MARTIN S. KIMBER,

Defendant.

Criminal Action No.
12-CR-506 (LEK)

PLEA AGREEMENT

*********************************

RICHARD S. HARTUNIAN, United States Attorney for the Northern District of New York (by Craig A. Benedict, appearing), and MARTIN S. KIMBER (with James Long, Esq., appearing) hereby enter into the following Plea Agreement regarding the disposition of certain criminal charges against the Defendant:

1. **Defendant's Promises.** In return for the consideration described below, MARTIN S. KIMBER agrees as follows:

a. The Defendant will withdraw his previous plea of not guilty and will enter a plea of guilty to each count of a three-count Information, charging him with Use of a Chemical Weapon (counts 1 and 2), in violation of 18 U.S.C. § 229, and Consumer Product Tampering (count 3), in violation of 18 U.S.C.§ 1365.

b. The Defendant consents to the entry of an order directing him to pay restitution to the Albany Medical Center in the amount of $200,451.48 whether or not the losses suffered resulted from the offenses of conviction. Moreover, the Defendant consents to the entry of

an order directing him to pay restitution in full to the United States for any expenses incurred incident to the seizure, storage, handling, transportation, and destruction of any property seized in connection with an investigation of the commission of the 18 U.S.C. §229 offense pursuant to 18 U.S.C. § 229A(c), and pay such other restitution as may be identified at or before sentencing to any person who would qualify as a victim, under 18 U.S.C. § 3663 or § 3663A.

c. The Defendant consents to the entry of an order directing him to forfeit certain assets to the United States, pursuant to the Forfeiture Allegations in the Information, as more fully set forth below, including the residence at 8 Lena Lane, Ruby, New York in Ulster County, and his 2007 Pontiac Solstice, color red, vehicle identification number 1G2MG35X87Y117569.

d. The Defendant consents to abandon any right, title and interest in one (1) HP Pavillion Model # M9510F, serial number CNX8471DHG. The Defendant consents to execute any necessary documents concerning this abandonment, including, but not limited to, an abandonment of claim form.

2. **Potential Penalties.** MARTIN S. KIMBER understands that his guilty plea to the three count information will subject him to the following potential penalties:

a. Maximum Term of Imprisonment: Life Imprisonment. (29 U.S.C. § 229A) (counts one and two).

b. Maximum Term of Imprisonment: Ten Years. (18 U.S.C. § 1365) (count three).

c. Supervised Release: In addition to imposing any other penalty, the sentencing Court may require the Defendant to serve a term of supervised release of up to five years, to begin at the expiration of any term of imprisonment imposed upon him. (18 U.S.C. § 3583) Should the

Defendant be placed on a term of supervised release and subsequently violate any of the terms and conditions of that release before the expiration of such term, he may be sentenced to up to five years imprisonment in addition to any prison term previously imposed upon him and in addition to the statutory maximum term of imprisonment set forth above. Under some circumstances, the Court may also extend the term of supervised release, and it may modify, reduce, or enlarge the conditions of such release.

d. Maximum Fine: 250,000 per count, for counts one through three. (18 U.S.C. § 3571) In its discretion, the Court may impose an alternative fine of the greater of $250,000 or twice the pecuniary gain to the Defendant or loss to any victim resulting from the offense of conviction. (18 U.S.C. § 3571(b) & (d))

e. Mandatory Restitution: Pursuant to the Mandatory Victim Restitution Act, the sentencing Court must order that the Defendant pay restitution to any victim, as more fully set forth in paragraph 1 above. (18 U.S.C. § 3663A)

f. Forfeiture: Pursuant to 18 U.S.C. § 229B(a), the defendant will be required to forfeit certain property to the United States as described in paragraph 1 above.

g. Special Assessment: The Defendant will be required to pay an assessment of $300, which is due and payable at the time of sentencing. (18 U.S.C. § 3013) The Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $300, payable to the U.S. District Court at the time of his sentencing.

h. Interest and Penalties: Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the Defendant's sentence, from as early as the date of sentencing.

      i. Collateral Consequences: Conviction of a felony under this Agreement may result in the loss of certain civil rights, including, but not limited to, the right to vote or the right to possess firearms.

3. **Sentencing Factors.** MARTIN S. KIMBER understands that the sentence to be imposed upon him is within the discretion of the sentencing Court, subject to the statutory maximum penalties and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by *United States v. Booker*, 543 U.S. 220 (2005). While the Court is not ultimately bound to impose a sentence within the applicable Sentencing Guidelines range, it must take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

4. **Elements of the Offense.** MARTIN S. KIMBER understands the following legal elements of the offenses stated in the Information and admits that those elements accurately describe his criminal conduct:

a. Use of a Chemical Weapon (count 1 and 2)

i. The defendant knowingly developed, produced, otherwise acquired, transferred directly or indirectly, received, stockpiled, retained, owned, possessed, or used, or threatened to use, a weapon;

ii. The weapons was a "chemical-weapon" as defined by law; and

iii. The defendant did not have a lawful or peaceful purpose when he developed, produced, otherwise acquired, transferred directly or indirectly, received, stockpiled, retained, owned, possessed, or used, or threatened to use the chemical weapon.

b. Consumer Product Tampering (count 3)

    i. The defendant tampered or attempted to tamper with a consumer product that affects interstate or foreign commerce;

    ii. The defendant did so with reckless disregard for the risk that another person would thereby be placed in danger of death or bodily injury; and

    iii. The defendant did so under circumstances manifesting extreme indifference to such risk.

5. **Factual Basis for the Plea.** MARTIN S. KIMBER admits the following facts, which establish his guilt with respect to the offense stated in the Information.

At all times relevant to Indictment 12-CR-232 (LEK), **MARTIN S. KIMBER**, the defendant, resided in Ruby, New York, within the Northern District of New York. **MARTIN S. KIMBER** was a licensed pharmacist within New York State for approximately 36 years. In order to receive and maintain his license and work as a licenced pharmacist, **MARTIN S. KIMBER** received education and training on the effects, harmful and otherwise, of chemicals and substances on the human body, as well as how to research such effects.

Elemental mercury (hereafter "mercury") is a well-documented hazardous substance. Among other things, mercury is a neurotoxin that can kill human nerve cells. Mercury is readily absorbed through unbroken skin. Inhalation and other forms of absorption can lead to death, brain and lung damage, impairment of speech, constriction of the visual field, hearing loss and somatosensory change, and other serious bodily injuries. The defendant well understood the above, and that the heating of elemental mercury, including the placing of mercury on or in toasters, and on or around heated food, greatly increased the likelihood that mercury would vaporize into the air and be inhaled

by individuals consuming such food or using or near such heating devices. As used by the defendant, as described below, elemental mercury is a chemical weapon as that term is defined in federal law.

On or about December 10, 2010 and December 23, 2010, **MARTIN S. KIMBER** received medical treatment at the Albany Medical Center, Albany, New York. On various dates thereafter, including on January 24, 2011, **MARTIN S. KIMBER** wrote to express concern about having to pay for his medical care. On February 22, 2011, the Albany Medical Center Associate Medical Director wrote back and explained why the bills were appropriate, and discussed the outcome associated with **MARTIN S. KIMBER's** having provided inaccurate information about his injury, and his decision not to complete the care prescribed by his treating physician.

On or about March 28, 2011, April 11, 2011, June 23, 2011, and March 2, 2012, patients, visitors, and hospital personnel discovered liquid mercury deposited in sundry locations throughout the Albany Medical Center, Albany, NY. That is, on March 28, 2011, mercury was found in the level D basement, the hallway outside the Post Operative Care Unit, the Triage window in the Emergency Room, and in the tracks to the door of the center elevator for Building D. Hospital emergency response units identified and collected several pounds of mercury. On April 11, 2011, mercury was found in the men's bathroom on the A1 level and in the main hallway in Building E extending from the M doors to the elevator lobby. Approximately one to two pounds of mercury were collected by emergency response personnel. On June 23, 2011, mercury was found on the pedestrian ramp leading from the main lobby up to the pedestrian parking garage bridge and in the E-1 corridor exiting the Choice Café and the center elevator of Building A elevator triplex. Approximately two pounds of mercury was collected. On March 2, 2012, mercury was found in the cafeteria at Albany Medical Center. That is, mercury was found in the cafeteria salad bar, apple bowl, banana basket, in a toaster,

on a table by the coffee station, in the cooler for the packaged salad dressing, in the ice cream freezer, and in a container of heated food (chicken tenders) that was being warmed under heating lamps and was available for purchase and consumption by cafeteria customers. The defendant was responsible for each of the above-described mercury disposals, and for tampering with the products above-described, including the mercury, each item of food, and the restaurant equipment to include the fruit, bowl, toaster, table, cooler, freezer, and heating lamps. The food products and food containers into and near which the defendant deposited mercury affected interstate commerce. **MARTIN S. KIMBER'S** purpose in disposing of the mercury throughout the Albany Medical Center and cafeteria on multiple occasions was to retaliate for hospital bills that he felt were unfair by causing panic at the hospital/cafeteria and an attendant loss of business when people became fearful of gaining treatment and eating there.

On March 29, 2012, **MARTIN S. KIMBER** possessed two canisters of mercury, one stored in his car and the other stored in his house. A search by law enforcement officers resulted in the seizure of both canisters. **MARTIN KIMBER** further engaged in computer searches at sites where more mercury could be purchased. The Defendant acted with the intent to commit each crimes set forth in counts 1 through 3.

    a.    The Defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the Defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant agrees that his sentence may be determined based upon such judicial fact-finding.

6. **Use of Defendant's Admissions.** The Defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth above in paragraph 5 shall be admissible and useable against the Defendant by the United States in any subsequent criminal or civil proceeding, even if he fails to enter a guilty plea pursuant to this Agreement, or if such a guilty plea is later vacated or withdrawn. The Defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with this Agreement generally.

7. **Collection of Financial Obligations.** In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees fully to disclose all assets in which he has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

a. The Defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The Defendant promises that his financial statement and disclosures will be complete, accurate and truthful.

b. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

c. The Defendant will sign an Affidavit of Confession of Judgment in whatever amount the Court sets forth as restitution at the time of imposition of sentence, plus accrued interest, in favor of the Albany Medical Center, and such other victim(s) as may be determined by the court.

   d. The Defendant will take no action, directly or indirectly, to transfer, hide, or restrict access to money or engage in any transactions whatsoever that will impede his ability to comply with his financial obligations under this agreement.

  8. **Forfeiture.** Forfeiture of the Defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other penalty that the Court may impose upon the Defendant in addition to forfeiture. Satisfaction of all, or any portion of, a fine, restitution, or other penalty that the Court may impose upon the Defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment that the Court may impose upon the defendant.

   d. In the event that any successful claim is made, by any third party, to the assets described above, the Defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party. The Defendant agrees that forfeiture of substitute assets as authorized herein and in the Forfeiture Allegations of the Information, pursuant to 21 U.S.C. § 853(p) shall not be deemed an alteration of the Defendant's sentence.

   e. The Defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

   f. The Defendant waives his right to a jury trial on the forfeiture of assets. The Defendant waives all Constitutional, legal and equitable defenses to the forfeiture of assets, as provided by this Agreement, in any proceeding, including but not limited to any jeopardy defense

or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

g. The Defendant acknowledges that the Government may institute civil or administrative proceedings against any or all of the Defendant's forfeitable assets including, but not limited to substitute assets and any forfeitable assets not identified by the Defendant, and agrees not to contest any such forfeiture proceedings.

h. The Defendant represents and warrants that he has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this Plea Agreement, other than those listed in the Forfeiture Allegations of the Information.

i. In the event the U.S. Attorney's Office determines that the Defendant has breached any condition of this Agreement, the Defendant agrees that none of the forfeited property shall be returned to him, nor shall he assert any claim to the forfeited property. The Defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends or associates.

9. <u>**Government's Promises and Reservation of Rights.**</u> In exchange for the plea of guilty to all counts of the Indictment by MARTIN S. KIMBER and his continuing compliance with all of the terms of this Plea Agreement, the United States Attorney's Office for the Northern District of New York agrees as follows:

a. It will dismiss Indictment 12-CR-232 and will bring no further federal criminal charges against the Defendant relating to specific conduct in the Northern District of New York committed before the date of this Agreement, which is limited to, and described in, the Information and the Defendant's admissions in paragraph 5 above, for so long as the guilty plea and

sentence on the Information remains in effect. It will further not file charges against the defendant for his possession of child pornography found on his computer, HP Pavilion model number M9510F, but it can and will bring such information to the attention of the court for its consideration as a factor relevant to sentencing, as provided for in paragraph 9(d) below.

b. If the guilty plea to the Information is later withdrawn or vacated, the charges dismissed or not prosecuted pursuant to this Agreement may be filed and prosecuted, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the filing of any such charges. The Defendant waives any defense or objection to the filing and prosecution of any such charges that are not time-barred by the applicable statute of limitations as of the date of this Agreement.

c. This agreement does not prevent the government from either recommending a specific sentence within the applicable Guidelines range as determined by the Court or, if the government deems appropriate, recommending that the Court impose a sentence above that range.

d. The U.S. Attorney's Office reserves the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the Indictment.

10. **Stipulations.** The U.S. Attorney's Office and MARTIN S. KIMBER agree to stipulate at sentencing to the statement(s) set forth in subparagraph a below, subject to the caveats set forth in the subparagraphs following.

a. Stipulations

*i.* The U.S. Attorney's Office will recommend a 2-level downward adjustment to the applicable Sentencing Guidelines range if, (A) through the time of sentencing, the

Defendant clearly demonstrates "acceptance of responsibility" to the satisfaction of the Government for the offense, as defined in U.S.S.G. § 3E1.1(a); and (B) the Government does not learn of new evidence of conduct committed by the Defendant, either before or after his guilty plea, that constitutes "obstruction of justice," as defined in U.S.S.G. § 3C1.1. If the Defendant clearly demonstrates "acceptance of responsibility" to the satisfaction of the Government and promptly enters a plea of guilty, thereby permitting the U.S. Attorney's Office to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently, the U.S. Attorney's Office will move for an additional downward adjustment of 1 level, if the Defendant otherwise qualifies under U.S.S.G. § 3E1.1(b).

    ii.  Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the Defendant's Criminal History Category and, in some cases, his total offense level.

    b.  It is understood that these stipulations cannot and do not bind the sentencing Court, which may make independent factual findings by a preponderance of the evidence and may reject any or all stipulations between the parties. The rejection of any or all stipulations by the Court will not be the basis for the withdrawal of a plea of guilty by the Defendant, and will not release either the U.S. Attorney's Office or the Defendant from any other portion of this Agreement, including any other stipulations agreed to herein.

    c.  No stipulation in this Agreement shall affect the parties' respective obligations to ensure that, to the extent possible, the Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any such factual information to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence

Investigation Report, and agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this Agreement.

        d.     To the extent the stipulations above do not reflect agreement on any factor or issue potentially affecting the applicable advisory Sentencing Guidelines range, the Defendant and the U.S. Attorney's Office each expressly reserves the right to advocate if, and how, any such factor or issue would apply under the Sentencing Guidelines.

11.     **Preliminary Sentencing Guidelines Estimates.** The Defendant understands that any estimate of the Defendant's total offense level, criminal history score, and/or Sentencing Guidelines range provided before sentencing is preliminary and is not binding on the parties to this Agreement, the Probation Office, or the Court.

12.     **Limitations on Agreement.** This Agreement is limited to the U.S. Attorney's Office for the Northern District of New York and cannot bind other federal, state or local prosecuting authorities. Furthermore, this Agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the Defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability or proceedings relating to the forfeiture of assets.

13.     **Agreement Not Binding on the Court.** The Court is neither a party to, nor bound by this Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the U.S. Probation Office.

        a.     If the Court rejects the provisions of this Agreement permitting the Defendant to plead guilty to each of the three counts in the Information in satisfaction of other charges, which provisions were negotiated pursuant to Fed. R. Crim. P. 11(c)(1)(A), the Court will afford the

Defendant an opportunity to withdraw his plea of guilty prior to sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

      b.    The Court is not bound by any recommendation, stipulation, or request made by the parties, pursuant to Fed. R. Crim. P. 11(c)(1)(B), as to the appropriate sentence, and the Defendant may not withdraw his plea of guilty if the Court declines to follow any such recommendation, stipulation or request. The U.S. Attorney's Office reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the Defendant's sentence, whether or not such decision is consistent with this Office's recommendations, stipulations, or requests.

14.    **Waiver of Defendant's Rights.**  The Defendant acknowledges that he has read each of the provisions of the entire Plea Agreement with the assistance of counsel and understands its provisions. The Defendant further acknowledges that his plea is voluntary and did not result from any force, threat, or promises (other than the promises in this Plea Agreement).

      a.    The Defendant understands his right to assistance of counsel at every stage of the proceeding and has discussed his constitutional and other rights with defense counsel. The Defendant understands that by entering a plea of guilty, he will be giving up his rights (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present evidence in his defense; and (vi) to remain silent and refuse to be a witness against himself by asserting the privilege against self-incrimination.

      b.    The Defendant has been advised by defense counsel of the nature of the charges to which he is entering a guilty plea and the nature and range of the possible sentence. The

Defendant understands the sentencing Court's obligation to consider the United States Sentencing Guidelines (as explained further above) and the Court's discretion to depart from those Guidelines under some circumstances or otherwise to impose a reasonable sentence outside of the applicable Sentencing Guidelines range.

15. **Waiver of Appeal and Collateral Attack.** The Defendant acknowledges that, after consultation with defense counsel, he fully understands the extent of his rights to appeal, and/or to collaterally attack the conviction and sentence in this case. The Defendant waives any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255, to appeal or collaterally attack his conviction and any sentence of imprisonment of ~~160~~ 120 mk months or less, including any related issues with respect to the establishment of the advisory Sentencing Guidelines range or the reasonableness of the sentence imposed. The Defendant acknowledges that the number of months specified above is not a promise of any particular sentence and is not binding on the Court. The Defendant agrees that, should the sentence imposed exceed ~~160~~ 120 mk months, this would not permit him to withdraw his guilty plea or to appeal or collaterally attack his conviction, but would merely allow the Defendant to appeal or collaterally attack the sentence imposed by the Court, to the extent permitted by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255 as to any amount greater than 160 months.

16. **Memorialization of Agreement.** No promises, agreements or conditions other than those set forth in this Agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court. This Agreement, to become effective, must be signed by all of the parties listed below.

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

Dated: 10/23, 2012

By: ______________________
Craig A. Benedict
Assistant U.S. Attorney
Bar Roll No. 101130

Dated: 10/9/, 2012

______________________
MARTIN S. KIMBER
Defendant

Dated: 10/9, 2012

______________________
James Long, Esq.
Attorney for Defendant
Bar Roll No. 506898